**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATHERINE KESTERSON, Individually and as Successor-In-Interest of the Estate of SCOTT KESTERSON, Deceased; CORA JANE KESTERSON; and HATTIE MAY KESTERSON, BY AND THROUGH HER GUARDIAN AD LITEM, KATHERINE KESTERSON, <br><br>            Plaintiffs, <br><br>     v. <br><br> BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.); BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.); BLOCK DRUG CORPORATION; CHATTEM, INC. (sued individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY); | Case No. 2:20-cv-03555-JWH-JPRx <br><br> **ORDER ON MOTION OF DEFENDANT CHATTEM, INC. TO DISMISS PURSUANT TO RULE 12(b)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE [41]** |

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | CYPRUS MINES CORPORATION;<br>CVS HEALTH CORPORATION<br>   (sued individually and as successor-<br>   in-interest to LONGS DRUG<br>   STORES);<br>LONGS DRUG STORES, L.L.C.;<br>LONGS DRUG STORES<br>   CALIFORNIA, L.L.C.;<br>WHITTAKER CLARK & DANIELS,<br>   INC.; and<br>DOES 1-450,<br><br>         Defendants. |

## I. INTRODUCTION

Plaintiffs Scott Kesterson and Katherine Kesterson filed this action in Los Angeles County Superior Court on October 25, 2019.[1] On April 16, 2020, Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. removed the case to this Court.[2] On October 1, 2020, Plaintiffs filed a First Amended Complaint.[3] In their FAC, Plaintiffs allege that Mr. Kesterson developed malignant mesothelioma as a result of his exposure to asbestos from asbestos-containing talcum powder.[4] Among the asbestos-containing products to which Mr. Kesterson was allegedly exposed is Gold Bond powder, manufactured by Defendant Chattem, Inc.[5]

On June 12, 2020, Chattem filed a motion to dismiss for lack of personal jurisdiction.[6] In its Motion, Chattem argues that it lacks sufficient contacts with California for this Court to exercise either general or specific personal jurisdiction over it.[7] For the reasons stated below, the Court **GRANTS** the Motion and dismisses Plaintiffs' claims against Chattem for lack of personal jurisdiction.

## II. FACTUAL BACKGROUND

According to the FAC, Mr. Kesterson developed mesothelioma from exposure to asbestos-containing talcum powder products.[8] The FAC lists

---

[1] *See* Notice of Removal, Ex. C [ECF No. 1-5].
[2] *See* Notice of Removal [ECF No. 1].
[3] First Am. Compl. (the "FAC") [ECF No. 64].
[4] *Id.* at ¶ 3. Mr. Kesterson passed away on July 30, 2020. *See* Notice of Death of Pl. Scott Kesterson [ECF No. 52]. The action is now being pursued as a wrongful death and survivorship action. *See* FAC 2:13-18.
[5] FAC ¶ 3.
[6] *See* Def. Chattem, Inc.'s Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) (the "Motion") [ECF No. 41].
[7] *See generally id.*
[8] FAC ¶ 3.

Mr. Kesterson's alleged exposure by place and time period.[9] Plaintiffs allege that Mr. Kesterson was exposed to asbestos-containing products at "[p]ersonal [r]esidences" in Henderson, Nevada, from approximately the early 1990s to the early 2000s through his "personal use of talcum powder products."[10] Plaintiffs further allege that Mr. Kesterson was exposed to asbestos-containing products in Nevada and California at "[p]ersonal [r]esidences" from approximately the early 1980s through the early 1990s as a result of his mother's use of talcum products.[11]

Plaintiffs and Chattem provided the Court with excerpts from Mr. Kesterson's February 2020 deposition in which he testified about his use of talcum products.[12] Mr. Kesterson testified that he used or was otherwise exposed to three forms of talcum product: (1) Johnson & Johnson baby powder; (2) Dr. Scholl's foot powder; and (3) Gold Bond powder.[13] Gold Bond powder, made by Chattem, is the product relevant to this Motion.

Mr. Kesterson testified that he was exposed to these powders in different ways: he used the Johnson & Johnson powder as baby powder; he used Dr. Scholl's foot powder on his feet; and he used the Gold Bond powder in his groin area.[14] He used the Gold Bond powder especially to prevent chafing during bicycling.[15] Mr. Kesterson explained, "I was an Eagle Scout and did a lot of Scouting. So we did a lot of bike trips to California as well. So used [*sic*] a lot

---

[9] *See* FAC, Ex. A.
[10] *Id.*
[11] *Id.*
[12] *See, e.g.*, Decl. of Mary T. Rahmes in Supp. of Pl.s' Opp'n to the Motion ("Rahmes Decl.") [ECF No. 46-1], Ex. 1.
[13] Rahmes Decl., Ex. 1 at 14 (Dep. Tr. at 56:14-22).
[14] *Id.* at 11-12 (Dep. Tr. at 30:21-49:18).
[15] *See id.* at 12 (Dep. Tr. at 48:18-49:9).

of different powders then as well."[16] Mr. Kesterson testified that he used Gold Bond powder from "middle of high school, sophomore year, kind of that time until my mid 20s or so," especially during a two-year missionary trip in 2002 and 2003 in Atlanta, Georgia.[17]

During his deposition, Mr. Kesterson answered questions about his potential use of Gold Bond powder in the state of California. In view of the significance of that testimony, the relevant portion of the transcript of Mr. Kesterson's deposition is set forth below:

> Q. Okay. Do you know if you ever purchased Gold Bond in the state of California?
>
> A. Yeah. So like I said, we were—I was—I was in Scouts growing up, and we did our—our big Scouting trip one year is we did a week-long bike trip up and down the Pacific Coast Highway. Excuse me. One. And we averaged about 30 to 50 miles a day. And so, you know, I don't know exactly that I purchased it then. I—you know, but I do know that there's a higher likelihood or chance that I purchased it in California than—because you—you try to pack as light—as light as you can when you're going out. And then our family trips often were to Southern California and going to—to the beach when I was growing up. Huntington Beach, Laguna Beach, Car- —Carpinteria. So for sure during that time my mom would have—have purchased some—some powder for us while we were there because we liked to ride boogie boards a lot, if you know what that is. It's kind of a half surfboard kind of a thing, or third of it. Anyway, when you're out riding the saltwater all day and you—and

---

[16] *Id.* at 11 (Dep. Tr. at 31:19-22).
[17] *Id.* at 12 (Dep. Tr. at 48:22-49:9).

you—you chafe real bad there. So I remember for sure having one trip where I chafed real bad and—and Mom having to go get us—us some—some powder—

Q. Do you remember—

A. —at that point.

Q. —it being Gold Bond?

MS. SALFITI: Sorry. I have a belated objection—

MR. BLUMENFELD-JAMES: Yeah. Go ahead.

MS. SALFITI: —to the last answer. Respectfully move to strike the nonresponsive and speculative portions of the answer. And I lost track of the question, so—

MR. BLUMENFELD-JAMES: Sure. I'll ask the question again.

BY MR. BLUMENFELD-JAMES:

Q. Do you recall it being a Gold Bond product that was—

DEFENSE COUNSEL: Leading.

BY MR. BLUMENFELD-JAMES:

Q. —purchased at this time?

A. Not Gold Bond per se.

Q. Okay. So it was a powder, but you're not sure what it was?

A. But if, you know, again, if it wasn't used for just the feet, which would have been Dr. Scholl's, or as a baby powder, which would have been Johnson & Johnson, so Gold Bond's the only other powder. I remember using it. So seeing that it was used for the purpose it was used for on my groin to prevent chafing, then it—it probably would have had to have been Gold Bond or else I wouldn't have known what it was.

-6-

   Q. Okay.

   DEFENSE COUNSEL:  Move to strike speculative portions, those portions lacking foundation.

   MS. SALFITI:  Join.[18]

  In support of its Motion, Chattem submitted a declaration from its "Assistant Secretary," Stacy Apgar.[19] Ms. Apgar testifies that "Chattem is a consumer healthcare products company incorporated under the laws of the State of Tennessee" with its headquarters and "principal place of business" located in New Jersey.[20] According to Ms. Apgar, "Chattem does not manufacture any products in California; does not maintain any stores, manufacturing facilities, or other property in California; and does not maintain assets or inventory in California."[21]

  Plaintiffs and Chattem dispute the nature and extent of Chattem's contacts with California.  Plaintiffs contend that, based upon information obtained from the internet, Chattem maintains an office in Redondo Beach, California.[22] Chattem, on the other hand, states that "[t]o the extent" it ever "had an office in Redondo Beach, California, or anywhere else in California, that office is now closed."[23] Further, "Chattem has no employees in Redondo Beach, California, or anywhere else in California."[24]

---

[18] *Id.* at 14 (Dep. Tr. 54:15-57:2).
[19] Decl. of Stacy Apgar in Supp. of the Motion (the "<u>Apgar Decl.</u>") [ECF No. 41-1].
[20] *Id.* at ¶¶ 4 & 5.
[21] *Id.* at ¶ 8.
[22] Rahmes Decl. at ¶¶ 3-6.
[23] Decl. of Kathy Caldwell in Supp. of the Motion (the "<u>Caldwell Decl.</u>") [ECF No. 47] at ¶ 6.
[24] *Id.* at ¶ 7.

## III. LEGAL STANDARD

A party may assert the defense of lack of personal jurisdiction by motion. Fed. R. Civ. P. 12(b)(2). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). In resolving a motion to dismiss for lack of personal jurisdiction, "uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Disputed facts are resolved in favor of the plaintiff. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the motion to dismiss is based on written submissions—rather than an evidentiary hearing— the plaintiff need only make a *prima facie* showing of jurisdiction." *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 979 (N.D. Cal. 2016) (citing *Schwarzenegger*, 374 F.3d at 800). "A plaintiff makes a '*prima facie*' showing by producing admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction." *Id.* (citing *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Scholl v. F.D.I.C. as Receiver for WA Mut. Bank, FA*, No. 08-3977 SC, 2009 WL 1625947, at *3 (N.D. Cal. June 5, 2009). Under California law, "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)).

A court may exercise personal jurisdiction over a foreign defendant only if the defendant has such minimum contacts with the forum state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citations omitted). There are two species of personal jurisdiction: general jurisdiction and specific jurisdiction. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *International Shoe*, 326 U.S. at 317). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A foreign corporation that engages in "'a substantial, continuous, and systematic course of business'" in California may still lack sufficient minimum contacts for a court in this state to exercise general personal jurisdiction over the corporation. *Id.* at 138 (citation omitted).

In contrast to general personal jurisdiction, specific personal jurisdiction "is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 564 U.S. at 919 (citation omitted). A court has specific personal jurisdiction over a defendant in a particular action if the elements of the following "three-prong test" are satisfied:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

|   |   |
|---|---|
| 1 | (2) the claim must be one which arises out of or relates to the |
| 2 | defendant's forum-related activities; and |
| 3 | (3) the exercise of jurisdiction must comport with fair play and |
| 4 | substantial justice, i.e. it must be reasonable. |

*Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802 (citation omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citing *Burger King,* 471 U.S. at 476–78).

## IV. ANALYSIS

### A. General Personal Jurisdiction

Plaintiffs argue that this Court has general personal jurisdiction over Chattem because Chattem's "business activities in California, when taken together, are sufficient to establish general jurisdiction."[25] According to Plaintiffs, "Chattem has a national (and even international) client base, markets, sells, and distributes its Gold Bond and lines of other personal care products throughout the United [S]tates, including California, Chattem has derived economic benefit from doing business over the years in California, and Chattem's advertising and promotional materials stress a national presence throughout the United States."[26] Plaintiffs also cite information from the internet that refers to a possible Chattem office in Redondo Beach, California, although Chattem disputes that such an office exists.[27]

---

[25] Pl.s' Opp'n to Chattem, Inc.'s Motion (the "Opposition") [ECF No. 46] at 5:7-8.

[26] *Id.* at 5:9-14; *see also id.* at 9:17-10:8 (discussing evidence that Chattem does business in California).

[27] *Id.* at 7:18-9:16.

Even setting aside the evidentiary problems with Plaintiffs' submissions,[28] Plaintiffs have not satisfied their burden of showing that the Court has general personal jurisdiction over Chattem. The Supreme Court has made clear that the test for general personal jurisdiction is "not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,'" but rather "whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Daimler AG*, 571 U.S. at 138–39 (quoting *Goodyear*, 564 U.S. at 919). "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Id.* at 118. Chattem has submitted competent evidence showing that its principal place of business is in New Jersey and that it is incorporated in Tennessee.[29] Plaintiffs have not rebutted this evidence.[30]

Aside from the state of incorporation and principal place of business, a corporation will be subject to general personal jurisdiction only under limited circumstances. For example, where a mining company set up wartime operations in Ohio after a hostile power occupied its location in the Philippines during World War II, the Supreme Court held that the mining company was subject to general personal jurisdiction in Ohio. *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 447-48 (1952). In contrast, in *Daimler AG*, Daimler's wholly owned subsidiary, Mercedes-Benz USA, LLC, had a regional headquarters in California and distributed tens of thousands of cars in the state, generating billions in revenue. *See Daimler AG*, 571 U.S. at 143 (Sotomayor, J., concurring).

---

[28] *See* discussion of evidentiary objections in Part IV.D., *infra*.
[29] *See* Apgar Decl. at ¶¶ 4-8; Caldwell Decl. at ¶¶ 5-7.
[30] Plaintiffs suggest that Chattem has a "headquarters" in Redondo Beach, California. Aside from the fact that a "headquarters" is not necessarily the same as a principal place of business, the Court rejects Plaintiffs' proffered evidence (printouts from websites) because it lacks foundation and is inadmissible hearsay.

Nonetheless, these contacts were not enough to render Daimler AG "essentially at home" in California such that it could be subjected to suit in the state. *Id.* at 137–42. *See also Goodyear*, 564 U.S. at 920 (general personal jurisdiction over a foreign corporation does not obtain merely because its goods reach the forum state through the stream of commerce).

Chattem disclaims any physical presence in California, but even if it did have an office and employees in the state, without more, such a limited presence would still not be enough for this Court to exercise general personal jurisdiction over it. There is no dispute that Chattem has sold and continues to sell products in California, but such conduct does not render Chattem subject to general personal jurisdiction. Accordingly, if the Court has personal jurisdiction over Chattem, it must be based upon specific (rather than general) personal jurisdiction.

### B. **Specific Personal Jurisdiction**

To exercise specific personal jurisdiction over Chattem, the Court must find that (1) Chattem purposefully directed its activities toward the forum state or purposefully availed itself "of the privilege of conducting activities in" California; (2) the claims in this lawsuit arise out of Chattem's "forum-related activities;" and (3) the exercise of jurisdiction would be reasonable. *Menken*, 503 F.3d at 1057. The Court addresses each element below.

#### 1. **Purposeful Availment or Purposeful Direction**

The first prong, which is often rendered the "purposeful availment" prong, in fact contains two subtests, either one of which may satisfy the first prong of the specific personal jurisdiction test. *See Menken*, 503 F.3d at 1057–58; *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). Typically, the "purposeful availment" test is applied in contract cases, whereas the "purposeful direction" test is applied in tort cases. *Menken*, 503 F.3d at 1057–58.

The Court concludes that the "personal availment" subtest is met here. Chattem does not dispute that it intentionally sells or has sold Gold Bond powder in California. In doing so, Chattem availed itself "of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802. Accordingly, the "purposeful availment" subtest is met, which satisfies the first prong of the specific personal jurisdiction test.

### 2. Arising Out of Forum-Related Conduct—"But For" Test

Chattem's objection to the Court's exercise of personal jurisdiction rests primarily on the second prong of the specific personal jurisdiction test.[31] In the Ninth Circuit, courts apply a "but for" causation subtest to determine "whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). The question is: "but for [Chattem's] contacts with . . . California, would [Plaintiffs'] claims against [Chattem] have arisen?" *Id.*; *see also Anthony v. Iron Mountain, Inc.*, No. CV 20-05932-AB (ASx), 2020 WL 5793449, at *6 (C.D. Cal. Sept. 25, 2020) (discussing but-for test).

Importantly, Mr. Kesterson's action in unilaterally bringing Gold Bond powder into the state would not, without more, be sufficient to satisfy the test, because his unilateral action would not count as **Chattem's** forum-related conduct. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (unilateral action "'of those who claim some relationship with a nonresident defendant'" does not satisfy requirement of forum contact) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Mr. Kesterson testified that he used Gold Bond powder during a bicycle trip, but he was not certain if he

---

[31] *See* Motion 6:20-8:18.

purchased it in California or brought it with him from out-of-state.[32] He explained, however, that "there's a higher likelihood or chance that" he purchased Gold Bond powder when he was in California because "you try to pack as light . . . as you can when you're going out" on such a bicycle trip.[33]

      Mr. Kesterson also testified about his family's beach trips in California during which his mother "for sure" would have purchased "some powder."[34] He further testified that he "remember[ed] for sure having one trip where [he] chafed real bad and" his mother had "to go get . . . some powder."[35] When asked if he recalled whether the product that his mother had purchased was Gold Bond powder, Mr. Kesterson responded "Not Gold Bond per se."[36] Upon further questioning, he explained, "[b]ut if, you know, again, if it wasn't used for just the feet, which would have been Dr. Scholl's, or as a baby powder, which would have been Johnson & Johnson, so Gold Bond's the only other powder."[37] Mr. Kesterson then stated, "I remember using it," but he did not specify whether "it" referred to Gold Bond powder.[38] Mr. Kesterson further explained that "seeing that it was used for the purpose it was used for on my groin to prevent chafing, then it—it probably would have had to have been Gold Bond or else I wouldn't have known what it was."[39]

      "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger*, 374 F.3d at 800 (9th Cir. 2004) (citing *Sher v.*

---

[32]    *See* Rahmes Decl., Ex. 1 at 13-14 (Dep. Tr. 51:21-52:21 & 54:15-56:22).
[33]    *Id.* at 14 (Dep. Tr. 54:25-55:3).
[34]    *Id.* (Dep. Tr. 55:7-9).
[35]    *Id.* (Dep. Tr. 55:15-17).
[36]    *Id.* (Dep. Tr. 56:11).
[37]    *Id.* (Dep. Tr. 56:14-18).
[38]    *See id.*
[39]    *Id.* (Dep. Tr. 56:18-22).

*Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). Plaintiffs have not met that burden. Mr. Kesterson's testimony does not establish that he or someone acting on his behalf purchased Gold Bond powder in California. Mr. Kesterson's testimony that "there's a higher likelihood or chance that" he purchased Gold Bond powder during his bicycle trip in California because "you try to pack as light as you can" does not establish that it is more likely than not that he did so; the statement is entirely equivocal.[40] Similarly, although Mr. Kesterson testified that his mother "for sure" would have purchased "some powder," he expressly stated that the "powder" was "[n]ot Gold Bond per se."[41] His subsequent testimony is not based upon any specific recollection, but rather is purely speculative. Further, Chattem contends that any use of Gold Bond powder in California by Mr. Kesterson was *de minimis*.[42] Although neither party adduces evidence on this point, the burden is on Plaintiffs to show that their claims arise out of Chattem's forum contacts.

Accordingly, Plaintiffs have failed to meet their burden of establishing that the claims at issue arise out of Chattem's contacts with the forum state. Plaintiffs have therefore not met their burden to show that the Court may exercise personal jurisdiction over Chattem.

C. **Subject Matter Jurisdiction**

Plaintiffs argue that the Court should also reconsider whether it has subject matter jurisdiction in light of the evidence that Plaintiffs present that Chattem does business and may have a physical presence in California.[43] The Court is mindful of the fact that it has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge

---

[40] *See id.* (Dep. Tr. at 54:23-55:3).
[41] *Id.* (Dep. Tr. at 55:7-56:11).
[42] Motion 3:25-27.
[43] Opposition 2:1-14 & 10 n.1.

from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). For the reasons stated above, however, the evidence does not show that Chattem is a California resident such that diversity jurisdiction is destroyed. Plaintiffs also argue that Chattem did not receive "formal" notice of removal and that Chattem has therefore not consented to removal. *See* 28 U.S.C. § 1446. The notice of removal, however, states that "Plaintiffs have not filed any proof that they have properly served Defendant Chattem, Inc." and that Chattem's consent to removal is therefore not required.[44] *See, e.g.*, *Hernandez v. Ignite Restaurant Group*, 917 F. Supp. 2d 1086, 1089 (E.D. Cal. 2013) ("there is no requirement for non-served defendants to join the petition for removal"). Accordingly, the Court finds no occasion to revisit its conclusion that it has subject matter jurisdiction over this action.

### D. Evidentiary Objections

Chattem objects to some of the evidence that Plaintiffs submit in support of their claim that Chattem has an office in Redondo Beach, California.[45] The Court **SUSTAINS** these objections because the information that Plaintiffs submit is hearsay that lacks foundation. It is not clear, for instance, that Chattem (or any knowledgeable person) had any role in preparing the information listed on the website printouts regarding Chattem's purported California office.

Plaintiffs object to the Apgar Declaration and the Caldwell Declaration.[46] Apgar testifies that she is Assistant Secretary for Chattem,[47] and Caldwell avers that she is Head of Sales and Trade Management for Sanofi, Inc., in which

---

[44] Notice of Removal at 10:7-12.
[45] Def. Chattem, Inc.'s Evidentiary Objs. to Rahmes Decl. [ECF No. 47-2] at ¶¶ 1-4.
[46] Pl.s' Objs. to Evid. Submitted by Chattem. Inc. [ECF No. 46-2]; Pl.s' Objs. to Evid. Submitted by Chattem. Inc. on Reply [ECF No. 50].
[47] Apgar Decl. 1:22-23.

capacity she oversees the sale of products by Chattem.[48]  The Court finds this foundation adequate and **OVERRULES** these objections.

### V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Chattem's Motion and **DISMISSES** Plaintiffs' claims for relief against Chattem for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Dated: December 28, 2020

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[48]   Caldwell Decl. 1:22-24.